Casey R. Fronk (Illinois Bar No. 6296535)
fronckc@sec.gov
Michael E. Welsh (Massachusetts Bar No. 693537)
welshmi@sec.gov
Troy K. Flake (California Bar No. 267523)
flaket@sec.gov
Attorneys for Plaintiff
Securities and Exchange Commission
351 South West Temple, Suite 6.100
Salt Lake City, Utah 84101
Tel:  (801) 524-5796

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH, NORTHERN DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>UTAH REGIONAL INVESTMENT FUND, LLC, a Utah limited liability company; and CHRISTOFER SCOTT SHURIAN, an individual;<br><br>Defendants, and<br><br>CCS OF UTAH, INC., a Utah corporation;<br><br>Relief Defendant. | Case No.: 1:23-cv-00106<br><br>**COMPLAINT** |

Plaintiff, Securities and Exchange Commission (the "Commission"), files this complaint against Utah Regional Investment Fund, LLC and Christofer S. Shurian (collectively, "Defendants") and CCS of Utah, Inc. ("Relief Defendant") and alleges as follows:

## SUMMARY

1. Over the course of at least six years, Defendants defrauded investors by misappropriating investor funds for personal expenses.

2. From October 2014 through April 2020, Defendants raised $18 million by offering and selling limited partnership interests to 36 investors. In connection with the offering, Shurian acted by and through Utah Regional Investment Fund, LLC ("URIF"), the General Partner of the limited partnership that issued the securities.

3. Defendants enticed Chinese foreign nationals to make investments of $500,000 each to fund the development of a resort in Garden City, Utah called Water's Edge Resort through the United States Citizenship and Immigration Services' ("USCIS") EB-5 Program.[1]

4. In their offering materials, Defendants represented they would use investor funds to build a hotel, condominiums, a waterpark, and retail space that would comprise the Water's Edge Resort. Although the offering materials represented the project would be completed in 2017, so far Defendants have completed only one of the retail buildings and started construction on some of the condominiums. Defendants have not built any hotel, waterpark, or the additional condominium buildings.

5. The offering materials further represented that investor funds would be spent solely on the development of the Water's Edge Resort. Contrary to these representations, Defendants spent millions of investor funds on Shurian's personal expenses and to pay a finder's fee to an entity retained to find Chinese investors.

6. Finally, the offering materials represented that Defendants had secured the additional equity funding necessary to complete the project from an investment firm. Defendants

---

[1] The EB-5 program allows foreign nationals to qualify for permanent residency if they make a qualified investment of at least $1 million (or $500,000 in certain geographic areas) in a new commercial enterprise that creates or preserves at least ten permanent full-time jobs for qualified U.S. workers.

failed to secure meaningful additional financing for the project and instead resorted to preselling condominiums.

7. As a result of this conduct, the Defendants violated the antifraud provisions of the federal securities laws, and the Commission seeks permanent injunctions, disgorgement of all ill-gotten gains from the unlawful conduct set forth here together with prejudgment interest, civil penalties, an officer-and-director bar as to Shurian, and such other relief as the Court may deem appropriate.

## JURISDICTION AND VENUE

8. The Commission brings this action pursuant to Sections 20(b) and 20(d) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. § 77t(b) and (g)] and Sections 21(d) and (e) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78u(d) and (e)] to enjoin such acts, practices, and courses of business, and to obtain disgorgement, prejudgment interest, civil money penalties, and such other and further relief as this Court may deem just and appropriate.

9. This Court has jurisdiction over this action pursuant to Section 22 of the Securities Act [15 U.S.C. § 77v] and Section 27 of the Exchange Act [15 U.S.C. § 78aa].

10. Venue is proper in this Court pursuant to Section 27 of the Exchange Act [15 U.S.C. § 78aa] because Defendants are located and reside in, and transacted business in, the District of Utah and because one or more acts or transactions constituting the violations alleged herein occurred in the District of Utah.

11. Defendants, directly or indirectly, made use of the mails or the means or instrumentalities of interstate commerce in connection with the conduct alleged in this Complaint.

## DEFENDANTS

12. **Utah Regional Investment Fund, LLC ("URIF")** is a Utah company formed in 2010 with its principal place of business in Provo, Utah. The United States Citizenship and

Immigration Services ("USCIS") authorized URIF to serve as an approved regional center under the EB-5 Immigrant Investor Program. URIF is the General Partner of Waters Edge Funding Partners LP in which the EB-5 investors invested. Shurian is the sole Manager of URIF.

13. **Christofer Scott Shurian,** age 57, is a resident of Mapleton, Utah. Shurian controls URIF, Waters Edge Funding Partners, Waters Edge Properties, CCS of Utah, and The Startup Building.

## RELIEF DEFENDANT

14. **CCS of Utah, Inc.** is a Utah corporation with its principal place of business in Orem, Utah. Shurian controls CCS of Utah. CCS of Utah received at least $400,000 in investor funds to which it had no legitimate claim.

## OTHER RELEVANT ENTITIES

15. **Waters Edge Properties, LLC** is a Utah limited liability company with its principal place of business in Orem, Utah. Shurian controls Waters Edge Properties, and it is the purported developer of the Water's Edge Resort. EB-5 investor funds were supposed to be loaned to Waters Edge Properties to finance the development of the project. However, Defendants transferred most investor funds to The Startup Building, LLC.

16. **Waters Edge Funding Partners, L.P.** is a Utah limited partnership with its principal place of business in Orem, Utah. URIF is its general partner and controlling entity, and the EB-5 investors are the limited partners. Waters Edge Funding Partners issued its limited partnership interests to raise funds from EB-5 investors.

17. **The Startup Building, LLC** is a Utah limited liability company with its principal place of business in Orem, Utah. Shurian controls The Startup Building. The Startup Building was the alleged general contractor for the Water's Edge Resort development project. Defendants directed investor funds from Waters Edge Funding Partners to The Startup Building.

## FACTS

**I.     The Securities Offering and the Structure of the Limited Partnership**

18.     From October 2014 through April 2020, Defendants solicited EB-5 Program investments in a real-estate project known as the Water's Edge Resort. Defendants billed the Water's Edge Resort project as development and construction of a hotel, condominiums, waterpark, and retail buildings on the shore of Bear Lake in northern Utah.

19.     With the assistance of Westlead Capital, Inc., an agency engaged in the business of finding EB-5 investors, URIF raised $18 million for the project from 36 Chinese investors.

20.     Defendants provided to investors a packet of investment documents that included a private placement memorandum ("PPM"), business plan, subscription agreement, limited partnership agreement, investor suitability questionnaire, escrow agreement, and confidentiality agreement.

21.     Shurian created, directed, or approved each of these documents, and Shurian had ultimate authority over the content of the offering documents.

22.     The business plan informed investors that URIF would use investor funds toward the development and construction of the Water's Edge Resort. The business plan indicated that the total cost of developing Water's Edge Resort would be $62.5 million, up to $22 million of which would come from EB-5 investors and the remainder of which would come from an entity called Velocity Ventures, LLC. The business plan further represented that construction on the project would begin the spring of 2014 and would be completed within 30 months.

23.     The partnership agreement formed a limited partnership called Waters Edge Funding Partners, LP, whose general partner is URIF and limited partners are the EB-5 investors. The agreement stated that Waters Edge Funding Partners was formed "to loan funds as so designated by the General Partner to The Waters Edge at Bear Lake."

24.     Investors had an expectation of profits based on the efforts of Shurian and his entities. Specifically, pursuant to the Waters Edge Funding Partners partnership agreement, the general and limited partners had rights to a pro rata distribution of the partnership's cash flow.

5

25. The partnership agreement further represented that as general partner URIF has "the exclusive right and power to manage, operate, and control the Limited Partnership and to do all things and make all decisions necessary or appropriate to carry on the business and affairs of the Limited Partnership."

26. The EB-5 investors were therefore passive, and any returns they received would come not from their efforts, but from the efforts of Shurian, URIF, and other entities Shurian controls.

27. The PPM stated that the offering was of up to 44 units of limited partnership interests in Waters Edge Funding Partners.

28. These units of limited partnership interests are securities under the federal securities laws.

29. Each unit was offered for $550,000: $500,000 constituted the "capital contribution," and $50,000 was an "administrative fee . . . to cover expenses associated with Subscriber's application."

30. The PPM, which incorporated by reference the business plan and partnership agreement, indicated that the partnership would use each investor's $500,000 capital contribution, "to make Investments by the Partnership as outlined in the Partnership Agreement, at the sole discretion of the General Partner [URIF]" and that "the entire Unit Price will be used for Investment purposes."

31. The PPM further represented that investors could expect profits. It stated, "The Investment of capital by the Partnership, which will be directed exclusively at the sole discretion of the General Partner [URIF], is intended to generate income and capital gains for the Partnership."

II.   **Flow of Investor Funds**

32. Notwithstanding Defendants' representations in the partnership agreement that investor funds would be held in separate "individual Capital Account[s]," Defendants pooled together investor funds into undifferentiated accounts controlled by Shurian.

33. Namely, $18 million in investor funds flowed from an escrow account in the name of URIF to one of two accounts in the name of Waters Edge Funding Partners.

34. Under Shurian's direction, Waters Edge Funding Partners then transferred roughly $10 million in investor funds to an account in the name of The Startup Building, an entity that Shurian exclusively controls.

### III. Defendants Misappropriated and Misused Investor Funds.

35. Defendants stated in the offering materials that they would only use the investors' $500,000 capital contributions for the development and construction of the Water's Edge Resort.

36. Contrary to these representations, Defendants repeatedly misappropriated or misused investor funds.

37. Such misappropriations include but are not limited to:

   a. over $1.9 million between 2015 and 2018 in payments to Westlead Capital and a related entity as payment for finding EB-5 investors;

   b. over $1.16 million on or around July 29, 2016 for the purchase of an unrelated property in Heber, Utah;

   c. nearly $250,000 on or around October 3, 2016 for the purchase of Shurian's primary residence in Mapleton, Utah;

   d. approximately $160,000 between November and December 2017 for the purchase of a vacation home in Mexico for Shurian;

   e. over $180,000 between 2016 and 2019 on vehicle purchases for Shurian;

   f. over $500,000 between 2014 and 2019 in Shurian's personal credit card payments;

   g. Approximately $340,000 between 2014 and 2019 to Shurian's ex-wife;

   h. over $700,000 between 2014 and 2019 in payments directly to Shurian's personal bank account; and

   i. approximately $420,000 between 2014 and 2019 in payments to CCS of Utah.

38. In total, Defendants spent at least $5 million in comingled investor funds on expenses unrelated to the development and construction of the Water's Edge Resort.

39. Defendants knew that using investor funds to pay for personal and unrelated business expenses was contrary to the representations made in the offering documents.

### III. Defendants Misrepresented Their Access to Additional Funds.

40. Defendants misrepresented to investors their access to additional capital to fund the Water's Edge Resort.

41. Although Shurian engaged in initial discussions with Velocity Ventures regarding funding the Water's Edge Resort construction and obtained a letter of intent, that funding never materialized.

42. Nonetheless, Shurian, knowing that no funding was coming from Velocity Ventures, continued to allow the business plan containing the representations about Velocity Ventures to be distributed to prospective investors.

43. As of October 2021, Defendants had not secured any additional funding on the project other than some small bridge loans from community banks. Accordingly, as of the end of 2021, Defendants had only built one of the commercial buildings at the Water's Edge Resort. Defendants, and had not broken ground on any of the condominiums or the hotel building. As a result, URIF was well behind its completion date of 2017, as represented in the business plan.

44. Since October 2021, Defendants started preselling condominium units to fund the construction of Water's Edge Resort.

45. With this funding, Defendants have begun construction of the condominium buildings.

46. Additional condominium buildings have yet to be built, and ground has not been broken on the hotel or water park.

### IV. Defendants Deceived USCIS.

47. As part of the EB-5 program, a regional center, like URIF, is required to submit to USCIS an Annual Certification of Regional Center each year on Form I-924A.

48. As part of the Form I-924A, a regional center must attest to the amount of capital investment spent on the approved project and number of jobs created each year by means of the EB-5 investors' capital contributions.

49. In its Forms I-924 for at least the years 2015 through 2019, Defendants misrepresented the amount of capital investment spent on the development and construction of the Water's Edge Resort and the number of jobs created as a result.

50. Shurian created false invoices from The Startup Building to Waters Edge Properties that included fabricated figures for amounts The Startup Building spent on the Water's Edge Resort.

51. Defendants used the figures from the fabricated invoices to support the numbers reported in the Forms I-924 for capital investment and job creation.

52. By means of these deceptive acts, Defendants were able to continue raising investor funds through the EB-5 program.

## FIRST CLAIM FOR RELIEF

### Violations of Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)]

(*Against Both Defendants*)

53. The Commission re-alleges and incorporates by reference each and every allegation in paragraphs 1–52, inclusive, as if they were fully set forth herein.

54. Defendants, directly or indirectly, singly or in concert, in the offer or sale of securities and by the use of the means or instruments of transportation or communication in interstate commerce or the mails, (1) knowingly or recklessly have employed one or more devices, schemes or artifices to defraud, (2) knowingly, recklessly, or negligently have obtained money or property by means of one or more untrue statements of material fact or omissions of a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, and/or (3) knowingly, recklessly, or negligently have engaged in one or more transactions, practices, or courses of business which operated or would operate as a fraud or deceit upon the purchaser.

55. By reason of the forgoing, Defendants, directly or indirectly, singly or in concert, have violated and, unless enjoined, will again violate Securities Act Section 17(a) [15 U.S.C. § 77q(a)].

## SECOND CLAIM FOR RELIEF

**Violations of Exchange Act Section 10(b) and Rule 10b-5 thereunder [15 U.S.C. § 78j(b); 17 C.F.R. § 240.10b-5]**

(*Against Both Defendants*)

56. The Commission re-alleges and incorporates by reference each and every allegation in paragraphs 1–52, inclusive, as if they were fully set forth herein.

57. Defendants, directly or indirectly, singly or in concert, in connection with the purchase or sale of securities and by the use of means or instrumentalities of interstate commerce, or the mails, or the facilities of a national securities exchange, knowingly or recklessly have (i) employed one or more devices, schemes, or artifices to defraud, (ii) made one or more untrue statements of a material fact or omitted to state one or more material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, and/or (iii) engaged in one or more acts, practices, or courses of business which operated or would operate as a fraud or deceit upon other persons.

58. By reason of the foregoing, Defendants violated and, unless enjoined, will again violate Exchange Act Section 10(b) [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

## THIRD CLAIM FOR RELIEF

**Equitable Disgorgement**

(*Against Relief Defendant*)

59. The Commission re-alleges and incorporates by reference each and every allegation in paragraphs 1–52, inclusive, as if they were fully set forth herein.

60. CCS of Utah obtained money, property, and assets as a result of the violations of the securities laws by Defendants, to which it has no legitimate claim.

61. CCS of Utah should be required to disgorge all ill-gotten gains which inured to its benefit under the equitable doctrines of disgorgement, unjust enrichment, and constructive trust.

## **PRAYER FOR RELIEF**

WHEREFORE, the Commission respectfully requests that this Court enter a final judgment:

**I.**

Permanently restraining and enjoining Defendants from, directly or indirectly, engaging in conduct in violation of Securities Act Section 17(a) [15 U.S.C. § 77q(a)], and Exchange Act Section 10(b) [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5];

**II.**

Pursuant to Section 20(b) of the Securities Act and Sections 21(d)(1) and (d)(5) of Exchange Act [15 U.S.C. §§ 77t(b), 78u(d)(5)], permanently restraining and enjoining Shurian from, directly or indirectly, including, but not limited to, through any entity owned or controlled by him, participating in the issuance, purchase, offer, or sale of securities; provided, however, that such injunction shall not prevent him from purchasing or selling securities for his own personal account;

**III.**

Ordering Defendants and Relief Defendant to disgorge all ill-gotten gains or unjust enrichment derived from the activities set forth in this Complaint, together with prejudgment interest thereon;

**IV.**

Ordering Defendants to pay civil penalties pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)] and Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)];

**V.**

Barring Shurian from serving as an officer or director of a public company pursuant to Section 20(e) [15 U.S.C. § 77t(e)] of the Securities Act and Section 21(d)(2) of the Exchange Act [15 U.S.C. § 78u(d)(2)];

**VI.**

Retaining jurisdiction of this action in accordance with the principles of equity and the Federal Rules of Civil Procedure in order to implement and carry out the terms of all orders and decrees that may be entered, or to entertain any suitable application or motion for additional relief within the jurisdiction of this Court; and,

**VII.**

Granting such other and further relief as this Court may deem just, equitable, or necessary in connection with the enforcement of the federal securities laws and for the protection of investors.

Dated: September 29, 2023.

                                                Respectfully submitted,

                                        **SECURITIES AND EXCHANGE COMMISSION**

                                        /s/ Troy K. Flake
                                        Troy K. Flake
                                        Casey R. Fronk
                                        Michael E. Welsh
                                        Attorneys for Plaintiff
                                        Securities and Exchange Commission